Michele Haydel Gehrke (SBN 215647)
Email: mgehrke@reedsmith.com
Kourosh Jahansouz (SBN 292559)
Email: kjahansouz@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendant
UNITED AIRLINES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STORM CATTOCHE, an individual<br><br>Plaintiff,<br><br>vs.<br><br>UNITED AIRLINES, INC., a Delaware Corporation, STEPHANIE LOCHMANN MCLERANAND, an individual, ANDREW WILLSON, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. _____<br><br>**DEFENDANT UNITED AIRLINES INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>San Francisco County Superior Court<br>Case No.: CGC-20-588077<br>State Action Filed: November 13, 2020 |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, THE CLERK OF COURT, AND PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant United Airlines, Inc. ("Defendant" or "United") hereby removes the above-captioned action from the Superior Court of the State of California for the County of San Francisco to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1441 and 1446, asserting original federal jurisdiction on the basis of diversity under 28 U.S.C. § 1332(a)(1).  Pursuant to 28 U.S.C. § 1446(d), copies of this Notice of Removal are being served upon counsel for Plaintiff Storm Cattoche ("Plaintiff"), and filed with the Clerk of the California Superior Court for the County of San Francisco, as an exhibit to a Notice to State Court of Removal to Federal Court.

## PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1. Plaintiff commenced this action against United on November 13, 2020 in the Superior Court for the County of San Francisco, in the case captioned, *Cattoche v. United Airlines, Inc. et al.*, Case No. CGC-20-588077 (the "State Court Action"). *See* Declaration of Michele Haydel Gehrke ("Gehrke Decl.") at ¶ 2.  In the State Court Action, Plaintiff alleged four state law claims against United: (1) retaliation in violation of Labor Code section 1102.5; (2) gender discrimination under disparate treatment and disparate impact theories in violation of FEHA; (3) race discrimination under a disparate treatment theory in violation of FEHA; and (4) hostile work environment harassment in violation of FEHA and failure to prevent harassment. *See generally* Complaint ("Complaint"). Gehrke Decl., ¶ 2.  Plaintiff, however, never served the Complaint on United.  Gehrke Decl., ¶ 2.

2. On December 8, 2020, Plaintiff filed a First Amended Complaint. *See generally* First Amended Complaint ("FAC").  Gehrke Decl., ¶ 3. No additional claims were added against United, but two claims were brought against two newly added co-defendants, Stephanie Lochmann McLeranand[1] and Andrew Willson: (1) retaliation in violation of Labor Code section 1102.5; and (2) intentional infliction of emotional distress.  Gehrke Decl., ¶ 3.  United was subsequently served with

---

[1] United does not have an employee with this name. Karpierz Decl., ¶ 6.  Defendant presumes Plaintiff is intending to sue SFO Inflight Supervisor Stephanie Lochmann MacLaren, but has failed to properly name her or serve her with the FAC.  Karpierz Decl., ¶ 6.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  the Complaint through its agent for service of process on February 8, 2021. Gehrke Decl., ¶ 4. Upon
2  information and belief, neither individual defendant has yet to be served in this Action. Gehrke Decl.,
3  ¶ 3.

4       3.     To date, United has not filed an Answer to the FAC in the State Court Action. Gehrke
5  Decl., ¶ 4. On March 10, 2021, Defendant timely removed the State Court Action to this Court. Gehrke
6  Decl., ¶ 4. Copies of the Complaint and First Amended Complaint in the State Court Action are
7  attached to the Gehrke Declaration as **Exhibit A** and **Exhibit B**, respectively, and constitute all
8  processes, pleadings, and orders purported to be filed or served on Defendants in this action. Gehrke
9  Decl., ¶ 6.

10       4.     A copy of the Notice to State Court of Removal to Federal Court is attached (without
11  exhibits) to the Gehrke Declaration at ¶ 6, **Exhibit C**.

12            **NO JOINDER NECESSARY**

13       5.     Upon information and belief, as of the date of this filing, co-defendants Stephanie
14  Lochmann McLeranand and Andrew Willson have not been served in the State Court Action. Gehrke
15  Decl., ¶ 3. Generally, all defendants must join in or consent to removal proceedings, ***except***
16  ***for unserved defendants***. *Riggs v. Plaid Pantries, Inc.*, 233 F. Supp. 2d 1260, 1264 (D. Or.
17  2001) (*citing Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir.
18  1984) (*overruled on other grounds by Ethridge v. Harbor House Restaurant,* 861 F.2d 1389 (9th Cir.
19  1988)) (stating that unserved defendants need not be joined)).

20       6.     Consequently, the citizenship of the unserved defendants McLeranand and Willson
21  should be ignored for purposes of removal. However, upon further information and belief, co-
22  defendants McLeranand and Willson would likely consent to this removal. Gehrke Decl., ¶ 3. Because
23  there are no other ascertainable defendants in this action, no consent to removal is necessary. Gehrke
24  Decl., ¶ 3.

25            **BASES FOR REMOVAL**

26       7.     This Court has original jurisdiction under 28 U.S.C. § 1332 pursuant to 28 U.S.C. §
27  1441 because it involves a controversy that exceeds the sum or value of Seventy-Five Thousand
28  Dollars ($75,000), and because Plaintiff and Defendant are diverse. *See Morris v. Princess Cruises,*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (complete diversity requirement inapplicable where "non-diverse defendant has been 'fraudulently joined.'").

## DIVERSITY JURISDICTION

8. "[F]ederal removal jurisdiction on the basis of diversity … is determined … as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transport Ass'n. of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).

9. Courts disregard fictitious "DOE" when evaluating diversity. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) ("[T]he citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal."). Additionally, the FAC does not set forth the identity or status of any said fictitious defendants, nor any charging allegation against any fictitious defendants.

**The Parties Are Diverse**

10. As set forth below, complete diversity of citizenship exists here because the Plaintiff and the only properly served Defendant in the case, United, are citizens of different states.

**Plaintiff's Citizenship**

11. Plaintiff alleges she is an individual who at all times mentioned in the FAC was a resident of the County of San Francisco, California. *See* FAC, ¶ 1.

12. A natural person's citizenship is determined by her state of domicile. *Kantor v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Lopez v. Nationstar Mortgage LLC*, 2015 WL 6478263, *2 (C.D. Cal. Oct. 26, 2015) ("In the absence of evidence to the contrary, a party will be treated as a citizen of its state of residence for federal diversity purposes."). Consequently, Plaintiff is domiciled in California.

**United's Citizenship**

13. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." United is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware, with its principal place of business in Chicago, Illinois under the "nerve center" test. FAC, ¶ 3; Karpierz Decl., ¶ 2; *see also Hertz Corp. v. Friend*, 130 U.S. 1181, 1192 (2010).

**Unserved Defendants Stephanie Lochmann McLeranand's and Andrew Willson's Citizenship Should Be Ignored For Purposes of Removal**

14. Defendants Stephanie Lochmann McLeranand and Andrew Willson are both domiciled in the state of California. FAC, ¶¶ 4-5  Further, upon information and belief, Plaintiff has failed to serve either individual defendants since filing her FAC over three months ago on December 8, 2020.

15. Pursuant to 28 U.S.C. section 1441(B)(2), an action may not be removed if "if any of the parties in interest ***properly joined and served*** as defendants is a citizen of the State in which such action is brought." (emphasis added). *In Molina v. JP Morgan Chase Bank*, 2011 U.S. Dist. 28285, *3 fn. 3 (N.D. Cal. March 7, 2011), the Northern District court explicitly stated that "[b]ecause the other Defendants identified by Plaintiff were not served in the state court action, [the served defendants] were not required to seek their joinder in removal." (*citing Salveson,* 731 F.2d at 1429). Meanwhile, the court in *Colorado Seasons, Inc. v. Friedenthal*, 2020 U.S. Dist. LEXIS 84645, *5-11 (C.D. Cal. May 13, 2020), elaborated further regarding removal actions in the context of when certain parties have not yet been "properly joined and served." There, the court ruled that, "in light of the text of § 1441(b)(2) and the cases that have interpreted it, § 1441(b)(2) ***does not preclude the removal of an action in which a forum defendant has been named in the complaint, but has not yet "properly joined and served." Id.*** at *11 (emphasis added). In fact, "a contrary interpretation would, in effect, either read 'served' out of the statute or read into it a requirement of a fact-intensive inquiry to determine whether there was a reasonable opportunity for service of the unserved defendant prior to removal." *Id.* As such, the court denied the plaintiff's motion for remand and held that omitting the unserved defendants' citizenship for purposes of removal was proper.

16. Courts in other districts have likewise held that unserved defendants should be ignored for purposes of removal. *See, e.g., Tex. Brine Co. v. Am. Arbitration Ass'n*, 955 F.3d 482, 487 (5th Cir. 2020)); *Gibbons v. Bristol Myers Squibb Co.*, 919 F.3d 699, 706-07 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 153-54 (3d Cir. 2018). In fact, one district court has further explained the "unserved defendant" exception by holding that

> [J]oinder in or consent to the removal petition must be accomplished by only those defendants: (1) who have been served; and, (2) whom the removing defendant(s) actually knew or should have known had been served. The second requirement

encompasses the served defendants whom the removing defendant(s) actually knew had been served. This requirement also mandates that the removing defendant(s) obtain the consent or joinder of the other defendant(s) whom the removing defendant(s) should have been aware of because of the constructive notice of the filing of the return of service in the state court. The constructive notice element should only be applied to removing defendants who had a reasonable time to become aware of the filing of such service and had a reasonable time in which to obtain the consent or joinder of such other defendants. *Milstead Supply Co. v. Casualty Ins. Co.*, 797 F. Supp. 569, 573 (W.D. Tex. 1992).

17. Similar to *Molina* and *Colorado Seasons*, removal here based on diversity is appropriate because United – the only "properly joined and served" defendant – is not a citizen of California.

**Alternatively, The Court Must Disregard the Citizenship of McLeranand and Willson Because They Are Fraudulently Joined**

18. As a separate basis, removal is also proper because the individual defendants were fraudulently joined. Although complete diversity is required under section 1332, district courts may ignore the fraudulent joinder of non-diverse defendants in determining whether diversity jurisdiction exists. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) ("[O]ne exception to the requirement for complete diversity is where a non-diverse defendant has been fraudulently joined"). A defendant's right of removal cannot be defeated by fraudulent joinder of a non-diverse defendant. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds."). Where a plaintiff clearly fails to state a cause of action against a resident defendant, joinder of the resident defendant is fraudulent. *Id.*

19. Joinder is fraudulent "if the plaintiff fails to state a claim against a resident defendant, and the failure is obvious according to the settled rules of the state…. In such a case, the district court may ignore the presence of that defendant for the purpose of establishing diversity." *Hunter*, 582 F.3d at 1043. Determining whether a plaintiff sufficiently stated a claim against a resident defendant, however, is "constrained to the facts actually alleged [in the complaint]; it does not extend to facts or causes of action that *could* be alleged via an amended complaint." *Kruso v. Int'l Tel. & Tel. Corp.,* 872 F.2d 1416, 1426 n.12 (9th Cir. 1989) (affirming district court's refusal to consider allegations made in plaintiffs' unfiled, proposed amended complaint submitted as an attachment to a motion for

1  reconsideration to determine whether valid claims had been stated for fraudulent joinder purposes).

## Plaintiff's Labor Code Section 1102.5 Claim

20. Courts have routinely held that non-employer individuals are not personally liable for retaliation. *See Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 1173-74 (2008). The bar on holding individuals liable for retaliation does not change simply because Plaintiff brings a retaliation claim against the individual defendants under California Labor Code section 1102.5. As the court in *Gonzalez v. Trojan Battery Co., LLC*, 2020 WL 2857487, *5-6 (C.D. Cal. June 2, 2020) recently explained,

> [T]he vast majority of the California Labor Code claims ostensibly plead against Marquez simply do not create liability against a non-employer individual like Marquez. See Cal. Lab. Code §§ 226.7, 512(a), 1194, 1197, 1197.1, 201, 202, 204, 226(a), 1174(d), 2800, 2802 (creating liability against employers for violations of the statutes Plaintiff has alleged have been violated). ***Additionally, the language of Cal. Lab. Code § 1102.5, while broader than that contained in the statutes above, has consistently been construed by district courts in the Ninth Circuit to preclude individual liability by a manager or other nonemployer***. *See CTC Glob. Corp. v. Huang*, 2018 U.S. Dist. LEXIS 222528, 2018 WL 4849715, at *4 (C.D. Cal. Mar. 19, 2018) ("Like the relevant statutes in Reno and Jones, it appears the California legislature intended simply to extend an employer's liability, rather than to create a new category (supervisors) of potential defendants"); *Tillery v. Lollis*, 2015 U.S. Dist. LEXIS 106845, 2015 WL 4873111, at *8-10 (E.D. Cal. Aug. 13, 2015); *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1030 (S.D. Cal. 2017).

21. Because California law does not support individual liability for alleged whistleblower retaliation under Labor Code section 1102.5, the individual defendants are sham defendants and should be ignored for removal purposes.

## Plaintiff's IIED Claim

22. Plaintiff's newly added fifth cause of action for IIED against the individual defendants is similarly deficient for failure to allege facts to state her claim. To "state a cause of action for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Yau v. Santa Margarita Ford, Inc.,* 229 Cal. App. 4th 144, 160 (2014).

23.     Importantly, termination, discipline, and criticism in the normal course of the employment relationship do not constitute outrageous conduct. *See e.g., Lawler v. Montblanc N. Am., LLC*, 704 F. 3d 1235, 1245-46 (9th Cir. 2013) (applying California law and finding that criticisms not outrageous even when given in gruff and intimidating manner because related to business operations and employee's performance); *Buscemi v. McDonnell Douglas Corp.*, 736 F. 2d 1348, 1352 (9th Cir. 1984) (applying California law and finding that termination not outrageous even when done in "callous and insensitive" manner); *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990) (discipline not outrageous even when supervisor said he wanted to cause "as much grief as possible" to plaintiff); *Trerice v. Blue Cross of California*, 209 Cal. App. 3d 878, 884-885 (1989) (termination, even where plaintiff "was undoubtedly distressed by the awkward way in which her termination was handled," insufficient to state a claim for IIED).

24.     Further, individually named defendants are not liable for IIED for routine personnel management decisions. *See, e.g., Zhang v. Walgreen Co., 2010 WL 4174635*, *3 (N.D. Cal. Oct. 20, 2010) ("Managing personnel is not outrageous conduct beyond the bounds of human decency. . . . [S]imply pleading personnel management activity is insufficient to support an IIED claim, even if the plaintiff alleges that such activity was improperly motivated. Rather, if personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.").

25.     Here, Plaintiff alleges that she sent an email to the individual defendants on January 11, 2020, raising concerns about material changes to the terms and conditions of International Pursers' employment. FAC, ¶ 14. Further, Plaintiff alleges that she "respectfully declined" to attend a "mandatory Purser meeting" scheduled by United management. FAC, ¶¶ 16-17. As a result, the following day, Plaintiff allegedly received a performance evaluation and a demotion from the position of International Purser. FAC, ¶ 18. Such limited allegations cannot give rise to a claim for IIED. In fact, the bar for an IIED claim is high and Plaintiff's FAC is deficient in alleging even the most basic underlying facts to state her claim. "In evaluating whether the defendant's conduct was outrageous, it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

1  Liability has been found only where the conduct has been so outrageous in character, and so extreme
2  in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly
3  intolerable in a civilized community." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998) (quoting
4  Rest. 2d Torts § 46, com. D.).

5        26.    Moreover, as to the individually named Defendants, Plaintiff offers no facts that
6  constitute outrageous or extreme conduct on the part of Mr. Willson or Ms. McLerenand.  In fact,
7  there are no allegations whatsoever against either Mr. Willson or Ms. McLerenand.[2] Notably, Plaintiff
8  does allege that United "stopp[ed] Ms. Cattoche from performing her duties, calling her in for non-
9  random testing in front of her co-employees and customers, and engaging in hyper-scrutiny of her
10 attire and performance." FAC, ¶ 23. Plaintiff, however, fails to provide any details regarding who
11 performed these alleged actions or when these alleged actions took place.

12       27.    Finally, Plaintiff's IIED claim is barred by workers' compensation exclusivity because
13 Plaintiff alleges that any purported injury occurred within the context of the employment relationship.
14 *See e.g. Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1080–81 (S.D. Cal. 2017) (California's
15 Workers' Compensation Act provides an employee's exclusive remedy against his or her employer
16 for injuries arising out of and in the course of employment….Claims for intentional infliction of
17 emotional distress are not excluded….These claims fall within the exclusive province of workers'
18 compensation so long as the conduct occurred at the worksite, in the normal course of the employer-
19 employee relationship.).  As such, Plaintiff's IIED allegations against the individual defendants must
20 be ignored for removal purposes.

21 **Amount in Controversy Exceeds $75,000**

22       28.    When courts "assess the amount in controversy [they] … include all relief to which a
23 plaintiff is entitled if the action succeeds." *Fritsch v. Swift Trans. Co. of Arizona, LLC*, 899 F.3d 785,
24 794 (9th Cir. 2018).  In determining whether the amount in controversy exceeds $75,000, the Court
25 must presume Plaintiff will prevail on all of her claims.  *See Kenneth Rothschild Trust v. Morgan*

---

[2] Paragraph 18 of the FAC mentions that a "Ms. Maclaren" provided Plaintiff with a performance evaluation and demoted her from the position of the International Purser. Even if Ms. Maclaren is the same person as Ms. Mcleranand, such an allegation is still simply a routine personnel management action that cannot form the basis of an IIED claim.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Stanley Dean Witter*, 199 F. Supp. 993, 1001 (C.D. Cal. 2002) ("a court must assume . . . a jury will return a verdict for the plaintiff on all claims made in the complaint"). Further, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submission." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 81 (2014).

29. In evaluating the amount in controversy where a plaintiff seeks unpaid wages, courts consider past and "future wages … whatever the likelihood that she will actually recover them." *Tipton v. Airport Terminal Servs.*, 2019 WL 185687, *9 (C.D. Cal. Jan. 14, 2019); *Woods v. Hertz Corp.*, 2018 U.S. Dist. LEXIS 43759 (C.D. Cal. March 15, 2018) (holding that defendant's burden in establishing the minimum amount in controversy was met by alleging $22,272 in lost wages, coupled with plaintiff's emotional distress and punitive damage claims). In evaluating the appropriate period of time for calculating future wages, "sixteen months from the date of removal is [] appropriate[.]" *Tipton*, 2019 WL 185687, *8; *see also Fisher v. HNTB Corp.*, 2018 WL 6323077, *5 (C.D. Cal. Dec. 3, 2018) ("Defendants' proposed date of trial for purposes of [removal] – one year from the date of removal – is a conservative estimate of the trial date."). Here, the Court can reasonably ascertain from Plaintiff's FAC and her prayer for relief that the amount in controversy exceeds $75,000.

30. Plaintiff alleges she was wrongfully removed from the purser program in retaliation for "whistleblower" complaints in violation of California Labor Code section 1102.5. *See generally* FAC, ¶¶ 29-42. Plaintiff also brings claims for gender discrimination, race discrimination, hostile workplace harassment, failure to prevent harassment, and IIED. *See generally* FAC, ¶¶ 43-78. Plaintiff specifically seeks economic damages in the form of past and future income and employment benefits, non-economic damages as a result of emotional distress, punitive and exemplary damages, interest on Plaintiff's alleged damages, and costs and attorneys' fees. *See* FAC, Prayer for Relief. Courts include each of these categories of damages in evaluating the amount in controversy. *See, e.g.*, *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) ("[E]motional distress damages may be considered when calculating the amount in controversy even where not clearly pled in the complaint."); *Ramirez v. Little Caesars Enterprises, Inc.*, 2018 WL 5816107, *10 (C.D. Cal. Nov. 2, 2018)(court includes benefits in

evaluating amount in controversy).

31. Plaintiff commenced her employment as a Flight Attendant at United in February 1989. FAC, ¶ 9. Over the years, she eventually retained the position of International Purser. FAC, ¶ 10. As an International Purser, Plaintiff received a premium payment of $7.50 per flight hour for any assignment in which she served as a Purser. Karpierz Decl., ¶ 4. On or about January 14, 2020, however, United removed Plaintiff from the International Purser program, at which time her position reverted back to that of a Flight Attendant. FAC, ¶18; Karpierz Decl. ¶ 4. Consequently, beginning February 2020, Plaintiff no longer received a $7.50 premium for each flight hour worked. Karpierz Decl. ¶ 4.

32. After her demotion to Flight Attendant, Plaintiff worked approximately 298 hours and 30 minutes from February 2020 through the end of the year.[3] Karpierz Decl. ¶ 4. Had Plaintiff not been removed as a Purser, United estimates that Plaintiff would have received at least an additional $7.50 per hour for the 298 hours and 30 minutes she worked. Karpierz Decl. ¶ 4. This comes out to a total of **$2,238.75** in lost wages (298.5 flight hours multiplied by $7.50 premium payment) in 2020 as a result of her demotion. Karpierz Decl. ¶ 4.

33. Because Plaintiff seeks "loss of earnings," to the extent Plaintiff seeks future damages or front pay, such front pay awards in California span several years. *See e.g. Smith v. Brown-Forman Distillers Corp.*, 196 Cal. App. 3d 503, 518 (1989) (front pay until mandatory retirement age reached which was four years); *Drzewiecki v. H & R Block, Inc.*, 24 Cal. App. 3d. 695, 705 (1972) (ten years). This front pay would include the Purser pay differential. In 2019 (the last full year Plaintiff worked as a Purser), Plaintiff had a flying time of 1,095 hours and 22 minutes. Karpierz Decl. ¶ 5. United estimates that had Plaintiff continued as an International Purser, she would have similarly worked approximately 1,095 hours and 22 minutes in both 2021 and 2022. Karpierz Decl. ¶ 5. As such, Plaintiff's lost front-pay wages, assuming she is entitled to at least 2 years of lost wages, totals approximately $8,215.25 in 2021 and $8,215.25 in 2020. Karpierz Decl. ¶ 5. Assuming a front-pay award of two years from the trial date, Plaintiff's purported front-pay award would be **$16,430.50**.

---

[3] Plaintiff's flight hours for 2020 were substantially lower than prior years because Plaintiff went on a leave of absence at various times throughout 2020. Karpierz Decl. ¶ 4.

Karpierz Decl. ¶ 5. Thus, Plaintiff's lost wages total at least approximately **$18,669.25**. Karpierz Decl. ¶ 5.

34. Plaintiff further seeks to recover emotional distress damages. FAC, ¶¶ 42, 51, 61, 68, Prayer for Relief. Emotional distress damages are considered for the amount in controversy. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) ("district court properly considered . . . emotional distress damage awards in similar age discrimination cases. . ."). Emotional distress damages in California discrimination cases can also be sizeable. *See e.g. Ramirez v. Little Caesars Enterprises, Inc.*, 2018 WL 5816107, *11 (C.D. Cal. Nov. 2, 2018) ("emotional distress damages ranged from $500,000 to $2.5 million"). United denies that emotional distress damages should be awarded here; however, for purposes of the amount in controversy requirement, these claimed damages should be considered and in of itself exceeds the amount of controversy requirement.

35. The FAC also seeks punitive damages. *See* FAC, ¶ 69, Prayer for Relief. Punitive damages are considered part of the amount in controversy. *See Simmons*, 209 F. Supp. 2d at 1033 ("[t]he amount in controversy may include punitive damages when they are recoverable as a matter of law"). "Punitive damages are available under FEHA." *Id.* Defendants deny that punitive damages should be awarded here; however, for purposes of the amount in controversy requirement, claimed punitive damages should be considered.

36. The FAC also seeks an award of attorneys' fees. *See* FAC, Prayer for Relief. "[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794. "Attorneys' fees are recoverable as a matter of right to the prevailing party under FEHA." *Id.* At least one California District Court "determined that an appropriate and conservative estimate for attorneys' fees in employment cases in this district may reasonably be expected to equal at least $30,000." *Ramirez*, 2018 WL 5816107, *10 ("includ[ing] $30,000 of attorneys' fees in the amount in controversy"). Defendants deny that any attorneys' fees should be awarded here; however, for purposes of the amount in controversy requirement, claimed attorneys' fees should be considered.

37. While Defendant denies any liability in connection with Plaintiff's claims, because diversity of citizenship exists and the amount in controversy exceeds $75,000, this Court has original

jurisdiction of the action pursuant to 28 U.S.C. §1332(a).  Gehrke Decl., ¶ 5.  *See Woods*, 2018 U.S. Dist. LEXIS 43759, *8-11. (holding that defendant's burden in establishing the minimum amount in controversy was met by alleging $22,272 in lost wages, coupled with plaintiff's emotional distress and punitive damage claims).

**VENUE**

38.    The State Court Action is being removed from the Superior Court of the State of California, County of San Francisco. *See generally* FAC. As such, venue lies in the Northern District of this Court pursuant to 28 U.S.C. §§1441 and 1446(a) as the judicial district embracing the place where the State Court Action was brought and is pending.

**TIMELINESS OF REMOVAL**

39.    This Notice of Removal is timely because Defendants have removed within 30 days of service. 28 U.S.C. § 1446(b).

**CONCLUSION**

WHEREFORE, Defendants give notice that the State Court Action pending against it in the Superior Court of the State of California for the County of San Francisco is removed to this Court.

DATED:  March 10, 2021

REED SMITH LLP

By:  /s/ Michele Haydel Gehrke
Michele Haydel Gehrke
Kourosh Jahansouz
Attorneys for Defendant
UNITED AIRLINES, INC.