FORTHRIGHT LAW, P.C.
DOW W. PATTEN (SBN: 135931)
dow@forthrightlaw.com
GREGORY M. SAAVEDRA (SBN: 314915)
gregory@forthrightlaw.com
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone (415) 228-6848
Facsimile (415) 228-6876

Attorneys for Plaintiff
STORM CATTOCHE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| STORM CATTOCHE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED AIRLINES, INC. a Delaware Corporation; STEPHANIE LOCHMANN McLARANAND, an individual, ANDREW WILLSON, an individual, DOES 1–10, inclusive,<br><br>Defendants. | Case No.: 3:21-cv-01686-JD<br><br>**THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiff, STORM CATTOCHE, through the undersigned counsel of record, files this Complaint and complains of the named Defendants UNITED AIRLINES, INC, STEPHANIE LOCHMANN McLERANAND, and individual, ANDREW WILLSON and DOES 1–10, each of them, jointly and severally, and for claims, alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the action as Plaintiff STORM CATTOCHE ("Plaintiff") is a resident of the state of California and the acts which form the basis of this action occurred within the City and County of San Francisco.

/ / /

2. This matter was originally filed in the Superior Court for the State of California, City and County of San Francisco on November 13, 2020. On March 10, 2021 Defendant UNITED AIRLINES, INC. removed this matter to the United States District Court for the Northern District of California.

3. Venue is proper in this Court as the acts complained of occurred in the City and County of San Francisco, and within this Judicial District, and the Defendant, UNITED AIRLINES, INC. ("UNITED" or "Defendant") is a Delaware Corporation licensed to and doing business in the City and County of San Francisco and the employment records relevant to this matter are administered and maintained in the City and County of San Francisco, and the unlawful employment practices set forth below occurred in City and County of San Francisco, within this judicial district.

4. Defendant UNITED, is a Delaware Corporation, and an American international airline company that offers passenger and cargo air transportation services, and employs more than 80,000 employees.

5. Defendant STEPHANIE LOCHMANN McLERANAND, is an individual employed by Defendant UNITED AIRLINES, INC., as Supervisor, and at all times relevant was a resident of the State of California, and is responsible for the damages arising from unlawful conduct against Plaintiff herein.

6. Defendant ANDREW WILLSON, is an individual formerly employed by Defendant UNITED AIRLINES, INC., as SFO Base Director, and at all times relevant was a resident of the State or California, and is responsible for the damages arising from the unlawful conduct against Plaintiff herein.

7. Plaintiff has been damaged in excess of the jurisdictional amount of this court.

8. Plaintiff duly filed a complaint with the Department of Fair Employment and Housing, and received a Right-to-sue; Plaintiff has therefore exhausted her administrative remedies.

///

## FACTS COMMON TO ALL CLAIMS

9. Ms. Cattoche is a long-term employee of United Airlines, commencing her employment in February of 1989 as a flight attendant, and eventually worked her way up and was promoted to the position of International Purser.

9. The position of International Purser at UNITED is held by a flight attendant who acts as liaison between the "flight deck", including pilots, captains, and first officers, and the flight attendants, and is paid a premium over and above the wages of flight attendant for performing such liaison services.

10. As a flight attendant and International Purser, Plaintiff has dutifully performed the responsibilities or her position, receiving numerous commendations for her work.

11. Based in the San Francisco International Airport ("SFO"), Plaintiff has consistently performed International Purser duties in an exceptional fashion, receiving numerous accolades and positive performance evaluations.

12. Commencing on December 16, 2019, changes began to occur at SFO which caused Plaintiff and other Pursers concern. On December 18, Stephanie Lochmann MacLaren sent an email titled "PLEASE READ EMAIL" to members of United management and all International Pursers based out of SFO. The email changed the terms and conditions of the International Purser role because it required, for the first time, that International Pursers instruct and manage Flight Attendant demeanor and appearance: "Please remind your crews to have fun & talk with customers." Lochmann MacLaren and UNITED management required International Pursers—as opposed to UNITED managers or supervisors—to brief and instruct Flight Attendants: "please brief your crews with a concerted effort towards being friendly and approachable."

13. These changes are material changes to the terms and conditions of Plaintiff's employment as an International Purser because International Pursers do not have managerial or supervisory authority over Flight Attendants.

14. On December 20, 2019, Plaintiff sent an email to Lochmann MacLaren and all International Pursers asserting that UNITED's new job requirements should be forwarded "DIRECTLY to ALL flight attendants and not just to the purser population, and or having

supervisor present who can communicate the company expectations at briefing." From Plaintiff's perspective, UNITED was "putting pursers in a supervisory or managerial role [. . .]."

15. Plaintiff received a number of emails and messages from other International Pursers regarding UNITED management's changes to the terms and conditions of the International Purser role. On December 21, 2019, Plaintiff emailed all SFO-based International Pursers requesting permission to compile one email of comments. The purpose was so "management can clearly see the angst and frustration [the recent email] has generated." Plaintiff gathered these comments over the next three weeks.

16. On January 11, 2020 at 9:30am, Plaintiff sent a seven-page email to all UNITED SFO managers and supervisors containing thirty-one "COMMENTS AND FEEDBACK" about UNITED's December changes. Plaintiff prefaced the comments:

> We respectfully requests that our comments and suggestions and taken under consideration and advisement in upcoming meetings, policy changes and discussions as it relates to the purser role and responsibilities.

UNITED management never directly responded to Plaintiff's email.

17. Meanwhile, Base Director Andrew Willson and the UNITED SFO management team had organized an International Purser Forum. The purpose of the Forum was for managers, supervisors, and International Pursers discuss the main points and some of the successes of the International Purser program. Willson and other members of UNITED SFO management, including Lochmann MacLaren, attended in their capacity as UNITED managers and supervisors. International Pursers who attended would not be compensated.

18. On January 11, 2020 at 2:34pm, Base Director Andrew Willson sent an invitation to all International Pursers to attend the International Purser Forum on January 15. This invitation was sent by a third party, Paperless Post. One minute later, at 2:35pm, an automated reply from Paperless Post was sent to all International Pursers, including Plaintiff, with the content:

> You replied "attending"

This caused Plaintiff to believe that UNITED mandated her and other International Pursers to attend the International Purser Forum without pay or reporting time pay. Plaintiff also believed that the Forum spurned the thirty-one "COMMENTS AND FEEDBACK" in Plaintiff's email

sent to UNITED managers and supervisors earlier in the day.

19. Later on January 11, Lochmann MacLaren forwarded Plaintiff's "COMMENTS AND FEEDBACK" email to Andrew Willson (at 11:30pm, with the commentary, "FYI"); and, at 11:45pm, to Kurt Wouters, UNITED's Manager of the International Purser Program. In Lochmann MacLaren's email to Wouters, Lochmann MacLaren commented:

> A performance meeting is planned with Storm this week.
> There has been an additional and albeit separate issue that regards her performance as an onboard leader.

Plaintiff was unaware of these communications among UNITED managers and supervisors.

20. Thirty-six hours later, at 11:52am January 13, Ms. Cattoche sent an email to Management which constituted protected activity, titled "DECLINE TO ATTEND PURSER MEETING". In it, Plaintiff refused to attend the "'voluntary' meeting on personal time, without compensation." Plaintiff perceived UNITED's action of sending "will attend" confirmations compelled attendance without pay, a violation of Wage Order 4-2001, 8 CCR §11040.

21. Upon information and belief, UNITED Management perceived Ms. Cattoche as about to report unlawful workplace practices to the California Labor Commissioner, the Department of Fair Employment and Housing, the California Division of Labor Standards Enforcement and/or the Equal Employment Opportunity Commission.

22. UNITED managers and supervisors did not directly respond to Plaintiff's January 13 email. However, they discussed its contents internally. At 2:32pm, John Slater (Senior Vice President, Inflight Services) forwarded Plaintiff's "DECLINE TO ATTEND PURSER MEETING" email to Dean Whittaker (Managing Director, Global Base Operations) and Kurt Wouters, declaring:

> We talked about exiting people from the purser program who aren't the right fit. Storm seems to fit the profile of someone who sees their position as a burden rather than an opportunity to lead. I think the next invite Storm needs to receive is the opportunity to return to a non-purser role.

Nine minutes later, Wouters replied:

> Stephanie, Storm's supervisor call me this morning and they are having a conversation with her and she wanted to know if they could remove her [. . .]
> Thank you for your feedback, I agree with you [. . .]
> I totally agree that this role is not for her.

And three minutes later, Whittaker concurred:

> Thanks Kurt, she needs to go.

Ten minutes later, Wouters forwarded the thread with Wouters, Whittaker, and Slater[1] to Lochmann MacLaren, summarizing their discussion that started with Plaintiff's "DECLINE TO ATTEND PURSER MEETING" email:

> John, Dean and myself support the bases decision to remove Storm from the Purser program.
> Please let me know how I can support you.

Wouters, Whittaker, and Slater used Plaintiff's refusal to attend the International Purser Forum without compensation as a basis to support the demotion Plaintiff by removing her from the International Purser Program.

23.   The following day, on January 14, 2021, Ms. Cattoche was given a performance evaluation by Lochmann MacLaren. While waiting for the meeting to begin, Plaintiff observed Willson to make eye contact with her in a manner that made her feel personally known and targeted, despite the fact that they had never personally met before. At the conclusion of the evaluation, Lochmann MacLaren did not take a performance level of disciplinary action, but instead demoted Plaintiff by removing her from the International Purser Program, along with a corresponding decrease in pay, benefits, and retirement.

24.   The next day, Lochmann MacLaren requested that Plaintiff be removed from the group email—the same group email that Plaintiff used to gather comments about UNITED's December changes to the Purser duties and responsibilities, and the same group email that Plaintiff carbon-copied when sharing her complaints with UNITED management on January 11 and January 13.

25.   The specious grounds for the demotion and removal have never been provided in writing to Ms. Cattoche, despite her repeated requests, and in violation of the ordinary course of business at United Airlines. The grounds for demotion and removal were purportedly related to a question regarding the service order in flight attendant duties. Such questions by pursers are exceedingly common, and do not result in discipline and do not result in demotion.

---

[1] Also included in this email thread is Michelle McCarthy (Managing Director, Flight Experience & Operations). However, McCarthy does not reply to the email thread.

26. For example, Plaintiff's similarly-situated comparator, George L. Rosete, not in Plaintiff's protected classes, had the following question on or about February 8, 2020:

> They just switched our airplane to CDG (SFO-CDG) from the 787V to the 787H. We have nine staffing as is normal on the V. The H only requires eight. This causes the FA03 position some confusion. I asked for guidance or clarification on this issue. .....

Upon information and belief, Mr. Rosete was not disciplined for having questions regarding service as did Ms. Cattoche.

27. Additionally, Plaintiff's similarly-situated comparator, Christopher Thomas Beaudoin, not in Plaintiff's protected classes, had the following question on or about February 8, 2020:

> Given a few postings here regarding clarification of service procedures (i.e. cereals in bowls; separate Y beverage services on INTL flights; variable staffing, etc.) can some of you Pursers give your impressions of: A) Clarity and consistency from our WHQ Purser team when you raise questions. Do you receive answer your question in plain English? B) Level of Purser support you feel you receives since our common metal merger last October C) Clarity of communication of our P&Ps when we Pursers question or WHQ INFLT team?

Upon information and belief, Mr. Beaudoin was not disciplined for having questions regarding service as did Ms. Cattoche.

28. As such, any allegations against Ms. Cattoche, even if true, would constitute only minor infractions for which non-complaining International Pursers outside of Ms. Cattoche's protected classes have not been disciplined—let alone demoted from a position as International Purser.

29. On January 20, 2020, Plaintiff emailed Kim Phillips (Senior Manager, Harassment & Discrimination Investigations) and Michele Hodges (Human Resources & Employee Relations) complaining of unfair treatment.

30. On or about January 21, 2020, Plaintiff received an email from Kim Phillips assigning her complaint to Colleen Roth (SFO Manager – HR & Employee Relations).

31. On or about January 23, 2021, Plaintiff requested from Lochmann MacLaren a written statement of the reasons why Plaintiff had been removed from her International Purser Position.

32. That same day, Lochmann MacLaren responded that she would not provide a statement in writing of the reasons for the demotion, and that Plaintiff was not entitled to a written explanation.

33. Mr. Wouters confirmed on January 29, 2020 that he was ratifying Plaintiff's demotion

from the International Purser position.

34. During UNITED's subsequent internal investigation, Roth and Wouters attempted, for the first time, to justify the demotion of Plaintiff by searching for other instances in which an employee was removed from the International Purser program without accompanying performance discipline or attendance discipline. UNITED discovered that only three other flight attendants had been removed from the International Purser Program since the contract had been ratified in 2016. Two of the "comparators" received performance discipline resulting in their removal from the program. The third "comparator" was removed after prior corrective action and, having been issued an attendance discipline level "three" (out of four), UNITED managers determined they were not available to fly Purser trips. At the time of the January 14 meeting and demotion, Ms. Cattoche was under no performance discipline, under no attendance discipline level, and was not aware whether she was under any corrective action.

35. Plaintiff has been part of the International Purser Program since its inception in 1998. For 22 years, Plaintiff did not suffer any form of formal discipline, corrective action, counseling, or demotion.

36. Plaintiff acted as an administrator for several International Purser communication forums, including the Facebook Group (where Pursers could post and respond), and the Telegram Channel (where Pursers could share in a continuous message thread).

37. When Plaintiff was removed from the International Purser Program, she notified the members of the Facebook Group and Telegram Channel so that a suitable replacement could be chosen.

38. Upon hearing that Ms. Cattoche was removed from the International Purser Program, twenty of her colleagues attested to Ms. Cattoche's reputation, integrity, work ethic, and dedication to her role as International Purser and Flight Attendant. They did so of their own accord, indicating that UNITED's demotion and removal of Plaintiff had professional consequences and impacts beyond a mere change in title and pay—UNITED sought to ostracize Plaintiff from a community of Pursers that she had helped and learned from for over twenty years.

39. Ms. Cattoche has experienced ostracism not only from Pursers, but from other Crew. Flight Attendants who had worked with her as a Purser demanded an explanation; Captains and Pilots who had worked with her as a Purser questioned by she was no longer a liaison for their routes. Because UNITED refused to identify actual misconduct or issue formal discipline, Plaintiff is at a loss for how to respond professionally. UNITED's ostracism of Plaintiff—based on no articulable misconduct or discipline—is extreme and outrageous.

40. Since that time, Ms. Cattoche continues to not only suffer the loss of pay, privilege, and career progression, but further is being subjected to unprecedented scrutiny to which other non-complaining flight attendants are not subjected.

41. The unprecedented heightened scrutiny includes stopping Ms. Cattoche from performing her duties, calling her in for non-random testing in front of her co-employees and customers, and engaging in hyper-scrutiny of her attire and performance that her non-African-American, male, and non-complaining co-workers are not subjected to.

42. In Plaintiff's 22 years of experience as an international purser, she knew that it was normal for one or two supervisors to be present for an international flight. In February 2020—the month after Plaintiff was demoted—Plaintiff observed that four or more supervisors were present for international flights that she worked on. On one of those flights, another coworkers commented "why are there so many supervisors here today, is there a VIP on this flight." Plaintiff believed that she was targeted with heightened scrutiny after her demotion as a result of her January 11 and 13 emails. After Plaintiff's March 4, 2020 flight, she observed the number of supervisors on her flights to return to normal levels.

43. On July 12, 2020, Plaintiff was conducting her duties and was greeted by a supervisor she had never met before. The supervisor greeted Plaintiff—and no other flight attendant on that crew—by name, which surprised Ms. Cattoche. Shortly afterward, Plaintiff was pulled aside from her job duties by a second supervisor. Plaintiff had never met the second supervisor before, but the second supervisor also addressed Plaintiff by name. This caused Plaintiff to feel targeted and intimidated. As she exited the plane, Plaintiff observed three other flight attendants on the same flight were wearing multicolored masks, like Plaintiff was. Off the plane, the supervisor

notified Plaintiff that multicolored masks did not adhere to the United dress code, and ordered Plaintiff to apply a solid color mask; Plaintiff complied. The supervisors did not speak to or approach any other crew members on the same flight about their multicolored masks. Later, another crew member on the flight commented "it was odd" that the supervisor singled out Ms. Cattoche and not any other crew member for the dress code infraction.

44. Three weeks later, on August 4, Plaintiff was called in for a meeting with a supervisor. Plaintiff was removed, in view of her colleagues, to a private area for this meeting. Fifteen minutes before the meeting began, Plaintiff was presented with documentation that Andrew Willson was advised of the facemask incident directly. Plaintiff thereby learned that the meeting was about the multicolored facemask she wore on July 12. Plaintiff was asked to explain the incident. There was no coaching or discipline issued at the meeting, so the meeting was pretextual: designed to harass Plaintiff for a second time under UNITED's hyper-scrutiny targeted toward Ms. Cattoche.

45. This is type or conduct is now pervasive in Ms. Cattoche's workplace constitutes harassment of Ms. Cattoche based upon her protected activities, and based upon United Airlines' long- documented history of treating African-American employees less favorably than whites, and also her race, based upon United Airlines' long-documented history of treating females less favorably, her gender.

**United Has a Pattern and Practice of Ignoring Sex and Race Harassment**

46. Defendant UNITED has a pattern and practice of not investigating or taking remedial action for workplace harassment related to sex and race.

47. In 2018 Defendant UNITED was sued by the Equal Employment Opportunity Commission, in the United States District Court for the Western District of Texas, Case No. 5:18-cv-817, alleging that "since at least May of 2011, and thereafter until at least July of 2016, Defendant engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. 2000(e)(a)(1)."

48. In 2014, Defendant UNITED was sued by an African-American flight attendant for failure to remedy racist death threats in the workplace in the Eastern District of Virginia. *Pryor*

*v. United Air Lines, Inc.*, No. 14-1442.

49. UNITED continues to have a pattern of not protecting its female and African-American employees from harassment based on race and sex.

**FOURTH CLAIM**
**CALIFORNIA GOVERNMENT CODE SECTION 12900,** *et seq.*
**HOSTILE WORK ENVIRONMENT HARASSMENT and**
**FAILURE TO PREVENT HARASSMENT**
**(Alleged against Defendant UNITED)**

50. The factual allegations of Paragraphs 1 through 49, above, are re-alleged and incorporated herein by reference.

51. Plaintiff has been subjected to pervasively hostile treatment in her workplace, greatly increasing the difficulty of performing all the necessary functions of her position.

52. The pervasively hostile treatment includes hyper-scrutiny of Plaintiff's performance, appearance, including invasions of Plaintiffs privacy and forcing Plaintiff into screenings and evaluations that her co-workers are not subjected to.

53. Defendant's actions violate Section 12900, *et seq.*, by maintaining a hostile work environment and failing to take all steps necessary to treating Females less favorably than their non-Female counterparts in the terms and conditions of their employment.

54. As a direct and proximate result of the acts and conduct of Defendants as alleged herein, Plaintiff has suffered loss of earnings and other economic damages in an amount to be proven at trial herein.

55. Plaintiff has also suffered humiliation, emotional distress, and loss of enjoyment of life as a result of the above conduct.

56. The foregoing conduct of Defendants was intentional, and made with malice and/or a reckless disregard of Plaintiff's rights under the FEHA and the California Labor Code. As such, Plaintiff is entitled to punitive and exemplary damages to deter such unlawful conduct in the future.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

//

**FIFTH CLAIM**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Alleged against All Defendants)**

57. The factual allegations of Paragraphs 1 through 56, above, are re-alleged and incorporated herein by reference.

58. The foregoing conduct by Defendants STEPHANIE LOCHMANN McLERANAND and Defendant ANDREW WILLSON. was extreme and outrageous, conduct which no person in a civilized society should be forced to bear.

59. Defendants STEPHANIE LOCHMANN McLERANAND and Defendant ANDREW WILLSON engaged in the conduct set forth above in order to cause Plaintiff severe emotional distress, with intent to cause distress upon Plaintiff and not for any lawful purpose.

60. In the alternative, Defendants STEPHANIE LOCHMANN McLERANAND and Defendant. ANDREW WILLSON engaged in the conduct set forth above with reckless disregard of the probability of causing emotional distress.

61. As a direct and proximate result or Defendant's conduct, Plaintiff has suffered severe emotional suffering, loss or enjoyment of life, pain, suffering and humiliation that no person in a civilized society should be forced to bear.

62. Plaintiff's severe emotional suffering was actually and directly caused by the conduct of Defendant STEPHANIE LOCHMANN McLERANAND and Defendant ANDREW WILLSON.

63. The conduct of Defendants STEPHANIE LOCHMANN McLERANAND and Defendant ANDREW WILLSON is the proximate cause of Plaintiff's severe emotional suffering. loss of enjoyment of life, pain, suffering and humiliation.

64. The extreme and outrageous character of the Defendants' conduct arose from an abuse of a position or relationship to Plaintiff, which gave Defendants actual or apparent authority over Plaintiff.

65. The foregoing conduct of Defendants was intentional, and made with malice and/or a reckless disregard of Plaintiff's rights, as such Plaintiff is entitled to punitive and exemplary damages to deter such unlawful conduct in the future.

WHEREFORE, Plaintiff has been damaged and prays judgment as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. For a mandatory injunction requiring UNITED to train its management to eliminate disparate treatment of females and African-American workers, and to maintain a system which identifies and corrects retaliation. discrimination, and harassment;
2. For damages including front pay, back pay, loss of benefits, and loss of earning capacity in amounts according to proof and in no event in an amount less than the jurisdictional limit of the court;
3. For damages for emotional distress attendant to the discrimination set forth herein, in amounts according to proof;
4. For punitive and exemplary damages to deter future unlawful conduct;
5. For attorneys' fees as provided by law;
6. For interest as provided by law;
7. For costs for suit herein;
8. For such other and further relief as the Court deems fair and just

Dated: September 08, 2022          FORTHRIGHT LAW, P.C.

                                   by: _____
                                   DOW W. PATTEN
                                   GREGORY M. SAAVEDRA
                                   Attorneys for Plaintiff STORM CATTOCHE

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury of all matters so triable.

Dated: September 08, 2022          FORTHRIGHT LAW, P.C.

                                   by: _____
                                   DOW W. PATTEN
                                   GREGORY M. SAAVEDRA
                                   Attorneys for Plaintiff STORM CATTOCHE